# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **00 C 5341** | **DATE** | **APRIL 19, 2001** |
| **CASE TITLE** | JOHNNIE BROWN v. WARDEN JERRY STEMES, etc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Petition for writ of habeas corpus is denied. The Clerk of the Court is directed to enter judgment in favor of respondent Warden Jerry Stemes and against petitioner Johnnie Brown denying the petition for writ of habeas corpus.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| ✓ | AO 450 form mailed by judge's staff. | |
| | Copy to judge/magistrate judge. | |

| CW | courtroom deputy's initials | |

number of notices **3**

APR 2 0 2001 date docketed

docketing deputy initials

04/19/2001 date mailed notice

Date/time received in central Clerk's Office

mailing initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHNNIE BROWN,               )
                             )
            Petitioner,      )
                             )
    v.                       )    No. 00 C 5341
                             )
WARDEN JERRY STEMES,         )
Superintendent, or authorized)
person having custody of     )
petitioner,                  )
                             )
            Respondent.      )

DOCKETED

APR 2 0 2001

## MEMORANDUM OPINION AND ORDER

Following a bench trial, Johnnie Brown was found guilty
of an armed robbery in which he held a knife to the victim's
throat and obtained proceeds consisting of 50 cents and an adult
book store token. The victim was not cut by the knife, but Brown
did hit the victim in the face before he left. Brown, who had
prior convictions for armed robbery, rape, and aggravated
kidnapping, was sentenced to the maximum term of 30 years'
incarceration. Presently before the court is Brown's petition
for a writ of habeas corpus which raises issues based on his
competency at trial and his sanity at the time he committed the
armed robbery. There is no contention that the evidence at trial
was insufficient to support Brown's conviction. There is also no
contention that Brown did not engage in the charged conduct,

other than the contention that he may have lacked the necessary criminal intent in that he was not sane at the time of the conduct.

The charged offense occurred early in the morning on March 26, 1991. During pretrial proceedings, Brown was represented by public defender Camille Kozlowski. The trial was set to begin on October 28, 1991. However, on that day Kozlowski told the judge that she had recently spoken to present counsel, who had represented Brown in prior criminal proceedings. Kozlowski was told that Brown was found unfit in a prior proceeding and had been prescribed psychotropic drugs while incarcerated.[1] Kozlowski had requested the psychiatric records, but had not yet received them and she requested a new psychiatric examination for purposes of determining Brown's fitness for trial and sanity at the time of the offense. In a 1997 affidavit, Kozlowski states that the report from counsel was her only basis for requesting the examination; Brown had been lucid and cooperative and given no indication of mental illness during her meetings with him. At the October 28, 1991 hearing, she stated that she knew there was "something different" about Brown, that she "had difficulties in speaking with him," that he was evasive in answering questions, and he "yelled" at her law clerk, but

---

[1]Correction facility medical records for the time period 1985 through 1988 have been submitted documenting that Brown was evaluated as schizophrenic and medications were prescribed. There is also a 1989 report prepared as part of a disability application. No records are provided supporting that, during a prior criminal proceeding, Brown was found unfit to stand trial.

that she "had no indication of the psychological problems" until she spoke to counsel. On the basis of the representations regarding Brown's past history, the court postponed the trial and ordered a psychiatric examination.

Staff psychiatrist Gerson Kaplan, M.D., of The Psychiatric Institute issued a report dated November 21, 1991. Dr. Kaplan had not been provided with any of the prior mental health records.[2] Dr. Kaplan did have police records, a transcript of the April 1991 preliminary hearing, and a report of a psychological examination performed two days earlier. Dr. Kaplan concluded that Brown was mentally fit for trial and legally sane at the time of the commission of the offense. He notes in support of his conclusions:

> Today . . . [Brown] is neatly dressed and groomed. He is coherent and oriented. He denies delusions, hallucinations or severe anxiety or depression. Defendant does not display any psychotic or bizarre behavior today. Defendant's answers today are brief and he does not volunteer any information. He appears to be mildly depressed. He doesn't show any obvious indications of anxiety. Defendant is alert, shows no confusion nor any gross memory problems. Defendant has no trouble understanding my questions, his answers are appropriate to the questions asked.

Dr. Kaplan also reported that Brown said his only past psychiatric history was being placed on medication in 1988 after

---

[2] The record also supports that Brown's trial counsel never received the prior records and that the trial court was not provided with the records prior to the second post-conviction proceeding.

being in a fight at a correctional facility. Although he had
indicated alcohol and drug abuse to the psychologist, Brown
denied such use when questioned by Dr. Kaplan and Dr. Kaplan
concluded that Brown was not being truthful with him. Dr. Kaplan
also recites that Brown showed a street wise knowledge and
familiarity with court and criminal procedures and the charges
against him. As to sanity at the time of the offense, Dr. Kaplan
states in part:

> . . . defendant doesn't claim any psychotic
> symptoms at the time of the alleged crime. He
> specifically denies hearing voices or seeing
> things, or feeling that anything or anybody was
> after him or trying to control his mind or body
> at the time of the alleged crime. . . . A review
> of the police reports does not indicate any sort
> of psychotic behavior on the part of the
> defendant.

Dr. Kaplan diagnosed Brown as having an antisocial personality
disorder.

The parties appeared before the court on November 25,
1991 and agreed that Brown was fit for trial. The case was set
to be tried on January 30, 1992. On that date, however,
Kozlowski was ill and public defender LaFonzo Palmer instead
appeared on Brown's behalf. Palmer met Brown for the first time
on that date and reviewed the case file, which included
Dr. Kaplan's report. The file did not include any of the prior
mental health records. In a 1997 affidavit, Palmer states that,
before trial, Brown was lucid and coherent. Palmer also states
that he suggested pleading guilty, but that Brown instructed him

not to engage in plea negotiations and that he wanted to go to trial that day and testify. In her affidavit, Kozlowski relates that she had advised Brown against testifying because his stated version of the events was essentially an admission of the crime. Brown had told her that he believed the victim was coming up behind him to attack so he pulled out the knife and grabbed the victim as an act of protection, but then also asked the victim for his money.

The trial was held the same morning that Palmer met Brown, beginning shortly after 10:00 a.m. The only witnesses at the trial were the victim, the police officer who arrested Brown, and Brown. It was a short trial.[3] Before testimony commenced, Brown was questioned about his waiver of a jury trial and he answered "Yes" to a number of questions. When asked if he discussed the type of trial with his attorney, he also added: "Lawyer is not appointed, but I am accepting the public defender." The judge did not understand that comment, but the questioning continued with further yes answers. Just prior to his testimony, Brown also responded to a couple questions about his desire to testify.

The victim testified that, on his way to a restaurant, Brown had asked him for a cigarette and he had provided one. On his way out of the restaurant, Brown was in the "corner" of a

---

[3]The transcript of the testimony itself is approximately 30 pages long. There were no opening statements nor closing arguments.

building and came out and grabbed the victim as he walked near that point. The victim denied walking behind Brown and yelling at him.

During Brown's testimony, he frequently had to be told to speak up. Brown initially testified that, when he first encountered the victim, the victim asked him if he had a cigarette and Brown said he did have one, but would not give it to the victim. Then Brown testified as follows:

Q. What happened then?

A. He says, no. I told him, I asked him did he have any money. He said yes. He said, do you have a dime. I said yes. He said, well, give me a dime. I will give you a cigarette. I rolled cigarette, asked him if you don't mind rolled, wait while I roll.

Brown then testified that he rolled the cigarette and the victim gave him a dime for it. Brown then continued to walk down the street.

Brown initially testified that he noticed the victim was behind him so he grabbed the victim and Brown pulled out his newly purchased knife. Brown further testified that he asked the victim why he was behind him and that the victim denied he had been behind him. However, he subsequently testified as follows:

Q. Why were you scared?

A. Because before when I walked the first, the first when I left him he went the opposite, he went to my right. We was on a corner. We met at the corner, like he said.
I heard him say, anyway I met him, but then as I walked back I was surprised when he got

around the block so soon.  I thought he was
fighting.  I grabbed him.

Brown then testified again that the victim had been behind him

and that, after grabbing the victim, he asked the victim for his

money.  On cross examination, Brown again testified that the

victim had been behind him.

After the close of evidence, the following colloquy

occurred.

THE COURT:  I don't need to hear rebuttal.
Is there something funny, sir?

MR. PALMER:  If you recall, I asked for a
BCX [psychiatric examination] on this case,
Judge.  Although the Psychiatric Institute did
not—Miss Kozlowski had different—

THE COURT:  Is there any argument in this
case?

MS. GROENVELD:  No, Judge.

A.  Fuck you, Jack.  Hear what I am saying?

THE COURT:  Take it easy, Mr. Brown.

MR. PALMER:  Be quiet, Johnnie.

A.  I am grown.  I am locked up, mother
fucker.  That is my mother fucking ass.

MR. PALMER:  I know that, Johnnie.  I know.
I know.  I know.

A.  You are a lying mother fucker.

MR. PALMER:  Just relax.  It is okay.

A.  Can I go to the washroom?

THE COURT:  We are waiting on opening
argument.

MR. PALMER:  Just a second.  You can go to the washroom.  Tell the judge you are sorry.

A.  Excuse me.

THE COURT:  That is fine, Mr. Palmer.  That won't be necessary.  I thought there, I thought the defendant was laughing.  He had his back to me.

MR. PALMER:  I understand, Judge.

THE COURT:  That is fine, Mr. Brown.  I understand your demeanor.

The judge then found Brown guilty and ordered a pre-sentence investigation.  Referring to the outburst that had occurred in court, Palmer moved for a second psychiatric examination.  The judge questioned the need for another examination only two months after the first one and commented that Brown "appeared to be nervous and upset after he testified." The judge took the motion under advisement.  The sentencing was set for February 25, 1992.

At the sentencing, the judge denied the motion for a new trial, but no mention was made of the oral motion for a psychiatric examination.  The Physical and Mental Health section of the pre-sentence investigation states in its entirety:  "Mr. Brown revealed that he was interviewed by a mental health professional in conjunction with his current offense.  Mr. Brown stated he is currently suffering from stress.  He stated he had been hospitalized once at Mercy Hospital for 1 day, fell down hurt himself, blackout (1984)."

In his 1997 affidavit, Palmer states:

> 6. I proceeded to sentencing without the psychiatric examination because the defendant once again was lucid and coherent, he had been previously evaluated psychologically and the pre-sentence investigation yielded no indication that one was necessary.
>
> &ast; &ast; &ast;
>
> 8. Due to the fact that there was a recent report from the Psychiatric Institute determining that the petitioner was fit and sane, even if I knew that he had previously been diagnosed as a schizophrenic, I would not have brought it to the attention of the court.

In December 1995, during the post-conviction proceedings, Brown was examined by a clinical psychologist, Keenan Ferrell, Psy. D., and psychologist William Woods, M.A. Dr. Ferrell also interviewed Brown's mother and was provided with Brown's past mental health records. In an April 11, 1996 letter responding to a question from Brown's post-conviction attorney, Dr. Ferrell opined:[4]

> . . . the symptoms of an individual diagnosed with schizophrenia could be masked to some extent and subdued by the individual's medication if the dosage is effective and properly regulated. However, if not on medication, there is still a variation of schizophrenic symptoms that may or may not be displayed at any given time. . . .
>
> It is possible for individuals with the diagnosis of schizophrenia to display symptomatology on an inconsistent basis. This means the symptoms may be more or less severe and apparent at different times. Stress can be a significant factor in the onset and severity of symptoms. For example, individuals affected with

---

[4]While in custody awaiting trial and during the trial, Brown was not being medicated. Also, he was not on medications at the time he committed the robbery.

this disorder tend to exhibit fewer symptoms when in a stable, predictable, consistent environment. Thus, an individual who has a history of being diagnosed with schizophrenia may appear asymptomatic during a given period of time if the conditions are right.

In the report of the psychological examination of Brown, Dr. Ferrell noted that Brown appeared fully oriented during the interview, but was anxious and fearful and exhibited paranoia. Brown responded without hesitation, but his answers were "consistently indirect and frequently illogical." Brown's thoughts sometimes were goal-directed, and were vague and tangential at other times. Dr. Ferrell observed no "overt signs of psychosis." Neuropsychological tests showed no signs of organic dysfunction. On intelligence tests, Brown had a full scale IQ score of 83, which is the low average range of intellectual ability.

Dr. Ferrell determined that Brown had "long suffered from depression and chronic, unresolved, painful emotional issues. . . . Mr. Brown has responded to his emotional pain through episodes of desperate, impulsive behavior, such as by abusing mood-altering substances or engaging in criminal behavior." Dr. Ferrell further stated:

> Finally, Mr. Brown admitted to having previously been on prescription medication. Currently he has been off this medication for so long that he is not responsible or rational enough to make appropriate decisions. Therefore, all decisions Mr. Brown made while off his medication should indeed be viewed as the decisions of an irresponsible, unreasonable, and illogical man. On repeated past evaluations he

was diagnosed with schizophrenia, a mental illness considered by most to be chronic and permanently disabling. Although the course of schizophrenia is known to vary, the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition (DSM-IV) reports that "complete remission is probably not common." Mr. Brown's past periods of treatment with anti-psychotic medication likely only lessened the severity of his disturbance. Such medications do not alleviate the disorder itself and long-term treatment with such substances is not reported to cause further deterioration of one's mental condition. In some cases continual use of psychotropic medication causes a condition known as tardive dyskinesia, but Mr. Brown is not felt to exhibit this disorder.

Based on current findings along with historical information, including a long history of being consistently diagnosed as a schizophrenic, it is felt that Mr. Brown has the diagnosis of Schizophrenia, Residual Type. Although his immediate clinical picture lacks prominent positive psychotic symptoms, such as hallucinations or disoriented speech or behavior, he continues to evidence eccentric behavior, mildly disorganized speech, and odd beliefs. Some paranoid delusions are present but these lack strong affect and are not prominent.


In summary, Dr. Ferrell stated:

Personality data and clinical interview indicated that Mr. Brown has chronic, significant mental health problems which hinder his daily functioning. He tends to be extremely withdrawn, he continually fears that others are out to hurt him, and he has with [sic] poor insight into his emotional problems. Mr. Brown's thoughts are dominated by a severely disturbing, chronic mental illness known as schizophrenia. It is this examiner's opinion that this disorder has interfered with Mr. Brown's thought processes for the majority of his life, apparently since adolescence. Therefore, his past criminal acts were clearly committed while under the thought-distorting effects of schizophrenia.

It is my current diagnostic impression that
Mr. Brown is classified as having:
    Axis I:    300.40  Dysthymic Disorder
               295.60  Schizophrenia, Residual
                         Type
    Axis II:  V71.09  No diagnosis

Brown's sentence and conviction were affirmed on direct appeal. In January 1995, Brown filed a _pro se_ petition for post-conviction relief. It was summarily denied in April 1995. After filing the _pro se_ notice of appeal, counsel entered an appearance on Brown's behalf and has represented him in all further proceedings. In 1997, the Illinois Appellate Court affirmed on the ground that the _pro se_ pleading was deficient, but indicated that the filing of a second, attorney-drafted post-conviction petition would not necessarily be barred as a successive petition. _People v. Brown_, No. 1-95-1945 (Ill. App. Ct. 1st Dist. Jan. 28, 1997) ("_Brown I_"). On April 28, 1998, the trial court again denied relief. The Illinois Appellate Court affirmed. _People v. Brown_, No. 1-98-1827 (Ill. App. Ct. 1st Dist. Aug. 31, 1999) ("_Brown II_"). On December 1, 1999, the Illinois Supreme Court denied leave to appeal.

Brown's federal habeas corpus petition was filed on August 30, 2000. Respondent admits that Brown's state court remedies have been exhausted and he does not contend that any issues being raised are procedurally defaulted or otherwise waived. In his first ground for relief, Brown contends that his right to due process was denied in that he was not fit to stand trial. In his second ground for relief, Brown contends that

counsel provided ineffective assistance of counsel by failing to adequately investigate his mental health. The second ground for relief actually contains three contentions, that an adequate investigation would have resulted in (a) a finding that Brown was unfit for trial, (b) a finding that he was legally insane at the time he committed the robbery, or (c) a lower sentence.

The issues before the Illinois Appellate Court in Brown II were whether the trial court erred by denying the petition instead of holding an evidentiary issue. As to Brown's present first ground, the Illinois Appellate Court found that no bona fide doubt existed as to Brown's fitness at the time of trial.

> In this case, the records subpoenaed, at best, show defendant suffered from schizophrenia from 1986 through 1989. However, the mere fact that defendant was schizophrenic then, does not mean he was unfit for trial in December 1991. Moreover, the December 1995 report of Dr. Ferrell simply reaffirms the fact that defendant has suffered from schizophrenia for the majority of his life. Although Dr. Ferrell opined that defendant was under the "thought-distorting" effects of schizophrenia at the time of the commission of the offense, this does not necessarily confirm that defendant was *** mentally unfit to stand trial.

Brown II, at 22 (quoting Brown I, at 13-14).

The Illinois Appellate Court held that Kozlowski's performance was not deficient for failing to obtain the past mental health records. Brown's behavior during their meetings did not indicate he was unfit and counsel's report to her of past mental illness was vague, but she nevertheless obtained a fitness

examination and Dr. Kaplan concluded Brown was fit for trial. At that point, no substantial question existed as to Brown's fitness and therefore no compelling reason existed for Kozlowski to continue to press to obtain the past records. Brown II, at 14-15. Alternatively, Brown II holds that the prejudice component of the claim would not be satisfied because there is no reasonable probability that obtaining the records would have changed Dr. Kaplan's conclusion or otherwise resulted in a finding that Brown was unfit at the time of trial. Id. at 15-16.

The Illinois Appellate Court held that Palmer did not perform deficiently by failing to follow up on his request for a second psychiatric examination. Other than the short outburst after Brown's testimony, there had been no other indication to Palmer that plaintiff was unfit for trial or sentencing. Alternatively, the record did not support a reasonable probability that a second examination would have found defendant unfit. Brown II, at 17-19.

As to the possibility of raising an insanity defense, the Illinois Appellate Court held that no bona fide issue of Brown's insanity existed in that Brown was coherent when arrested shortly after the offense and when subsequently interviewed by prosecutors, Dr. Ferrell's report did not sufficiently confirm that Brown was insane at the time of the offense, and Dr. Kaplan concluded that Brown was sane at the time of the offense. Brown II, at 19-20.

As to a possible effect on sentencing, the Illinois
Appellate Court noted that mental health problems are not
inherently mitigating.

> . . . Accordingly, counsel is not
> necessarily ineffective for failing to present
> such evidence.  After hearing aggravating and
> mitigating evidence, including counsel's comment
> that while defendant was found fit, he clearly
> suffered from problems, the trial court sentenced
> defendant to 30 years' imprisonment.  He stated
> that defendant was pathetic and could have
> overcome his criminal activities a long time ago
> but had made no effort whatsoever to do so.
> According to the court, the only alternative was
> a long sentence.  There was virtually no hope for
> rehabilitation and defendant was certainly a
> danger to society.
> Even if counsel had presented evidence that
> defendant was diagnosed as a schizophrenic in the
> past, this does not demonstrate how he was
> affected at the time of his crime and sentencing.
> It is clear the trial court based its decision on
> defendant's repeated and long history of criminal
> activity.  There is no evidence that if the trial
> court had before it information that defendant
> had mental problems in the past, it would have
> sentenced him to a lesser term.  This is
> particularly true in light of the fact defendant
> had been found fit and his overall behavior in
> court was normal.  While we recognize defendant
> engaged in an outburst, the trial judge witnessed
> this event and we must presume he took it into
> consideration in his sentencing decision.

Brown II, at 20-21.

For Brown to be entitled to federal habeas corpus relief,
the state court decision must be "contrary to, or involve[ ] an
unreasonable application of, clearly established Federal law, as
determined by the" United States Supreme Court or be "based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. § 2254(d);

Kapadia v. Tally, 229 F.3d 641, 644 (7th Cir. 2000); Alvarez v. Boyd, 225 F.3d 820, 824 (7th Cir. 2000), cert. denied, 121 S. Ct. 1192 (2001).

A state court determination is an unreasonable application of Supreme Court precedent if the state court identifies the governing legal principle, but unreasonably applies that principle to the facts of the case. Morgan v. Krenke, 232 F.3d 562, 565 (7th Cir. 2000), cert. denied, 121 S. Ct. 1423 (2001) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000)). "Unreasonableness is judged by an objective standard, and under the 'unreasonable application' clause, 'a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Morgan, 232 F.3d at 566-67 (quoting Williams, 120 S. Ct. at 1522). This standard applies to both pure questions of law and mixed questions of law and fact. Kapadia, 229 F.3d at 644; Sanchez v. Gilmore, 189 F.3d 619, 623 (7th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).

The unreasonable determination of facts prong must be considered along with § 2254(e)(1) which provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." See Kapadia, 229 F.3d at 644; Sanchez, 189 F.3d at

623.  Under some circumstances, a failure to consider the totality of the evidence may be a basis for finding an unreasonable determination of facts.  See Williams, 120 S. Ct. at 1515, 1525; Bottoson v. Moore, 234 F.3d 526, 534 (11th Cir. 2000); Kibbe v. DuBois, 120 F. Supp. 2d 114, 126 n.23 (D. Mass. 2000).

Supreme Court precedent clearly establishes that Brown had the constitutional right not to be tried unless he had "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and . . . 'a rational as well as factual understanding of the proceedings against him.'"  Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v. United States, 362 U.S. 402 (1960)).  See also Drope v. Missouri, 420 U.S. 162 (1975); Pate v. Robinson, 383 U.S. 375 (1966); Tenner v. Gilmore, 184 F.3d 608, 613 (7th Cir.), cert. denied, ~~184 F.3d 608~~ *528 U.S. 1052* (1999).  Even if the accused is competent at the beginning of the trial, a court must be alert to circumstances suggesting a change.  Sanchez, 189 F.3d at 623 (quoting Drope, 420 U.S. at 181).  A competency hearing is only required if the available facts create a bona fide doubt about the accused's fitness to stand trial.  Tenner, 184 F.3d at 613 (quoting Gosier v. Welborn, 175 F.3d 504, 507 (7th Cir.), cert. denied, 528 U.S. 1006 (1999)).  Thus, the accused must produce clear and convincing evidence raising threshold doubts about competency.  Sanchez, 189 F.3d at 624 (quoting Nguyen v. Reynolds, 131 F.3d 1340, 1346 (10th Cir. 1997), cert. denied, 525

U.S. 852 (1998)); Tenner, 184 F.3d at 613. A habeas petitioner must present substantial facts supporting that he was incompetent during pertinent times of the state proceedings; substantial facts being "facts sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during the trial." Galowski v. Berge, 78 F.3d 1176, 1181 (7th Cir.), cert. denied, 519 U.S. 878 (1996). Also, it must be shown either that Brown II unreasonably applied the applicable law or made an unreasonable determination of the facts. See Tenner, 184 F.3d at 614.

A person suffering from schizophrenia is not per se incompetent to participate in legal proceedings. See Eddmonds v. Peters, 93 F.3d 1307, 1314 (7th Cir. 1996), cert. denied, 520 U.S. 1172 (1997). See, e.g., Collignon v. Milwaukee County, 163 F.3d 982, 985 (7th Cir. 1998); United States v. Downs, 123 F.3d 637, 640 (7th Cir. 1997). Dr. Ferrell stated that, as of December 1995 (approximately four years after the trial), Brown was "not responsible or rational enough to make appropriate decisions." But Dr. Ferrell also stated that, as of 1995, while evidencing eccentric behavior, mildly disorganized speech, and odd beliefs, Brown lacked prominent psychotic symptoms such as hallucinations, disorganized speech, or disorganized behavior and the paranoid delusions that were present lacked strong affect and were not prominent. Dr. Ferrell nevertheless opined that "all decisions Mr. Brown made while off his medication should indeed

- 18 -

be viewed as the decisions of an irresponsible, unreasonable, and illogical man." When asked generally about schizophrenia, though, he opined that a schizophrenic person off medication could have periods when symptoms were not present or were limited and this would be more likely when the person is in a stable, predictable, and consistent environment.

At the time of trial, Brown was incarcerated, which can be a stable, predictable, and consistent environment. At the pertinent time, both the attorneys who represented him found that Brown was able to communicate and aid in his own defense, and that he was lucid. A contemporaneous psychiatric examination also failed to support that Brown was incompetent at the time. This would be consistent with the possibility that Brown was not exhibiting more severe symptoms as of the time of trial. Contrary to Brown's present characterization, he did not appear to lack lucidity when responding to questions about waiving his right to a jury and waiving his right not to testify. Neither did his trial testimony indicate he lacked an understanding of the proceedings. He did have the outburst following his testimony, but it was brief and may have resulted from the stress of testifying. There is nothing to support that he was unable to understand or assist his attorneys before or after the outburst. In light of the contemporaneous evidence of Brown's competence, Dr. Ferrell's opinion as to Brown's likely mental abilities while

off medications four years earlier[5] does not constitute clear evidence raising a real and substantial doubt as to Brown's competency at the time of trial. Cf. Downs, 123 F.3d at 641 (court did not err in failing to hold a competency hearing where a contemporaneous psychiatric report indicated the defendant was competent to stand trial and neither of his attorneys questioned his competence, even though the psychiatrist's report also indicated the defendant probably suffered from schizoaffective disorder and the defendant had acted erratically, including sending the court letters that referred to apparently delusional attempts to poison him in prison).

Even if the conflicting evidence arguably is substantial enough to raise doubt, arguable is as far as it goes. The Illinois Appellate Court did not unreasonably apply Supreme Court precedents by concluding otherwise. Neither did it make an unreasonable determination of the facts. Contrary to Brown's contention, the Illinois Appellate Court did not fail to consider the totality of the evidence by ignoring certain evidence. The Illinois Appellate Court expressly acknowledged that Brown had previously been found to be schizophrenic, the court mentions and discusses the reports of Ferrell and Kaplan, makes reference to the report prepared for a disability determination, discusses the two attorneys' statements, and discusses the transcripts of the pertinent proceedings. It is clear that the Illinois Appellate

---

[5]Dr. Ferrell does not specifically address the possible effects of a prison environment or being on trial.

Court's decision was based on consideration of the entire record. Brown's first ground does not state a basis for granting federal habeas corpus relief.

Still to be considered are the claims of ineffective assistance of counsel. "To succeed on an ineffective assistance claim, a defendant must establish that his counsel's performance was constitutionally deficient, 'meaning that the performance fell below the legal profession's objective standards for reasonably effective representation' and that the deficiency prejudiced the defendant's defense, 'meaning that "there is a reasonable probability that but for [counsel's] unprofessional errors, the results of the proceedings would have been different."'" Anderson v. Sternes, 243 F.3d 1049, 2001 WL 253135 *7 (7th Cir. March 15, 2001) (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991), cert. denied, 502 U.S. 1116 (1992) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984))).

As was previously discussed, the record does not support that Brown was unfit to stand trial. Therefore, the claim that further investigation by counsel, particularly obtaining the past mental health records or more effectively arguing for a second psychiatric examination, would have resulted in a finding that Brown was not fit for trial or sentencing fails on the prejudice prong because there is not a reasonable probability that Brown would have been found unfit had there been further investigation.

Therefore, this aspect of the ineffective assistance of counsel claim fails.  See Eddmonds, 93 F.3d at 1317.

Similarly, the record does not support a reasonable probability that more effective representation would have resulted in a finding that Brown was insane at the time of the robbery.  Under Illinois law, "[a] person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct."  720 ILCS 5/6-2(a).  The record supports that Brown was suffering from schizophrenia at the time he engaged in the robbery.  Being schizophrenic does not mean a person necessarily satisfies this defense.  See United States v. Reed, 997 F.2d 332, 334 (7th Cir. 1993).  Also, as previously discussed, Brown did not have prominent symptoms at the time of the robbery.  Evidence supports that Brown was lucid at the time he was arrested and during a subsequent interview by prosecutors.  Dr. Kaplan concluded that Brown was not insane at the time he committed the offense.  Dr. Ferrell opines that Brown was "under the thought-distorting effects of schizophrenia" at the time of the offense.  That, however, does not necessarily mean Brown failed to appreciate the criminality of robbery at knife point.  Moreover, this court must defer to the Illinois Appellate Court's interpretation of state law that Ferrell's report does not adequately satisfy Illinois's insanity defense.  Since the record does not support a reasonable probability that Brown was legally insane at the time he

committed the robbery, this aspect of the ineffective assistance of counsel claim fails on the prejudice prong. See Long v. Krenke, 138 F.3d 1160, 1164 (7th Cir. 1998); Jones v. Page, 76 F.3d 831, 843-44 (7th Cir.), cert. denied, 519 U.S. 951 (1996).

The last issue to consider is Palmer's alleged ineffectiveness in failing to adequately investigate Brown's mental condition for purposes of sentencing. The Illinois Appellate Court held that, had the additional psychological evidence that is now available been before the sentencing court, there was no reasonable probability of a lesser sentence. Brown II, at 20-21. The Illinois Appellate Court opinion evidences careful consideration of the pertinent facts. Case law supports that evidence of psychological problems is not necessarily mitigating. See Cade v. Haley, 222 F.3d 1298, 1305-08 (11th Cir. 2000); Green v. Johnson, 116 F.3d 1115, 1123 (5th Cir. 1997); United States ex rel. Henderson v. Page, 2000 WL 1466204 *31-32 (N.D. Ill. Sept. 29, 2000). It was not an unreasonable application of the law nor an unreasonable determination of the facts for the Illinois Appellate Court to conclude that further investigation and presentation of mental health issues during sentencing did not have a reasonable probability of resulting in a more favorable sentence. Therefore, the sentencing aspect of the ineffective assistance of counsel claim fails.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus is denied.  The Clerk of the Court is directed to enter judgment in favor of respondent and against petitioner denying the petition for writ of habeas corpus.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED:  APRIL  19 , 2001